The 4th District of Bella Corda, the State of Illinois, has now convened. The Honorable Amy St. Helena is presiding. You may be seated. Good afternoon to everyone. We are taking up on the record case number 4241245, Wendy Clark v. The City of Galena, et al., and counsel, if you'll please state your appearances for the record. Starting with the appellants. Good afternoon. My name is Gregory Cox. I'm here for Defendant Appellants v. The City of Galena. Thank you. Good morning. I'm David Hyde for Defendant Appellants, True North Quality Commons, and the LLC. And have the appellants decided this morning how they'd like to allocate their time between argument? We have, Your Honor. We're going to split the time, and I will begin. All right. Thank you. Counsel for the appellant? Yes. Yes. Attorney Eric Burr on behalf of plaintiff of L.E. Wendy Clark. Good afternoon. Thank you. Attorney Eric Carlson on behalf of plaintiff of L.E. Wendy Clark. All right. Thank you. And who will be arguing today, counsel? I will. Thank you. If we may, I believe we're going to try and argue for two minutes since we were responding separately to the... So you'll be splitting your time as well? Yes, if that pleases the court. That will be just fine. Counsel for the appellant, you may proceed. Thank you. If that pleases the court, counsel Clark. Again, I'm here on behalf of the defendant, City of Galena. Our assertion that Kerbalo erred in finding that the fact of cross-examination of the developer did not occur at a public hearing of the Zoning Board of Appeals for the City of Galena was a violation of plaintiff's procedural due process rights under the circumstances presented. Plaintiff relies most in her assertion that she was entitled to cross-examination of the developer on our Supreme Court's decision in Claren v. Billy DeVille. It is our position that the Claren decision is distinguishable from the present case and that the legislative action that has occurred since then has modified the underpinnings of that decision such that its precedential value in this situation is questionable. Claren itself notes that the long-standing proposition is stated by the U.S. Supreme Court in Hanna v. Larch that to what extent the full penalty of due process rights commonly associated with quasi-judicial proceedings must be afforded to interested parties depends upon the purpose of the hearing. And I think that purpose is going to be one of the key features in distinguishing why Claren is not applicable to this case. There is no bright-line rule without reviewing circumstances. The Claren court was faced with an unusual situation where the Village of Weill had a joint meeting of the Zoning Board of Appeals, the Planning Commission, and the Village Board collectively. As a part of that meeting, the Village Board took action to approve the special use request that was at issue at the meeting. Significantly, the court in Claren noted an appeal that viewed independently based upon the individual purposes of each municipal body present, whether and to what extent interested parties should be afforded the right to cross-examine adverse witnesses varies depending upon the type of hearing at issue. It further noted in the decision that when a municipal body acts legislatively, its decision is subject only to review for arbitrariness and as a matter of substantive due process. Claren also reached the conclusion that the legislature had signaled an intent to change the classification of zoning activity by a municipality from legislative to administrative, a conclusion that was later proved to be wrong. As noted in Friesen, Inc. v. County of McLean, that it had long been the rule prior to their claim that municipal bodies act on a legislative capacity when they conduct zoning hearings. And under the standard announced in LaSalle National Bank v. County of Cook, such decisions were reviewed as a matter of substantive due process to determine if the municipality had acted arbitrarily or capriciously. This line of cases also clearly holds that the basis of procedural due process in such cases is notice and meaningful opportunity to be heard. Following Claren and its determination that zoning decisions were to be construed as administrative in nature, the legislature took action to amend 65 ILCS 511-13-25 to clarify the role of the municipality in zoning matters and mandating that all actions relating to zoning authority were to be considered legislative in nature. The legislative history associated with the amendment specifically included statements that the corporate authorities of municipalities and counties are not well suited to conduct many trials and that the Claren decision was the motivation for the amendment. In our case, the Galena Zoning Board of Appeals conducted its hearing independent of any other municipal body and had no authority to make any final decisions on the zoning matters before it. It was constituted to gather facts from all interested parties both for and against the proposed zoning classification and to pass the information on to the city council which would make a decision to approve or deny the request. The ZBA held two hearings on the proposal from the co-defendant developer. The first of which lasted approximately four hours and the second approximately five hours where all interested parties were allowed an unlimited period of time to express their views including both direct presentations and rebuttal. The trial court made a finding in its decision here that the plaintiff, Ms. Clark, appeared at both such hearings and spoke at length at each time without limitation. Fundamental fairness was achieved and that she had notice and a meaningful opportunity to be heard. At the conclusion of the first hearing, the record was sent on to the city council without recommendation. And at the second hearing, a recommendation for approval of the modification was made but in neither case was any action taken by the ZBA. That was solely in the province of the city council. In Claren, the decision maker was present at the meeting and action was taken at the meeting and speakers were limited to two minutes of time and cross-examination was expressly denied at that time. None of that was the case in the ZBA meeting held in Galena. Since Claren, 22 separate appellate cases have noted that Claren was either superseded by action of the legislature or that it was otherwise distinguishable. Many others, including two from this court, discussed the case and reached conclusions differing from Claren. One such case, raised to a sponsor by the trial court in our case, as instructive but of course not presidential, is an unpublished opinion from this court, Schreiner v. County of Logan. Of all of the post-Claren decisions, it comes the closest to the situation before the bar. In the Schreiner case, this court was presented with a decision from Logan County where the Logan County Zoning Board of Appeals held a public hearing on rezoning a piece of property. At the outset of that hearing, a specific request was made by an opponent to the rezoning to allow cross-examination of the applicant and that request was specifically denied. Ultimately, the Logan County Board approved the rezoning petition and the case went to trial on a stipulated record as we have here. The trial court ruled that its review of the action was de novo as a legislative decision and limited to a claim of constitutional substitute due process under the rational basis test and the LaSalle factors. The county's code and the municipal code were amended by the legislature in identical fashion following Claren and thus it is instructive despite the fact that it was an appeal of the county decision. On the appeal of Schreiner, this court agreed with the trial court that the standard review was limited to a matter of constitutional substitute due process under the rational basis test and the LaSalle factors or a violation of constitutional procedural due process. This court went on to note that any violations of substitute due process must be proven by clear and convincing evidence and further stated that the plaintiff had shown no evidence that they were not afforded notice and an opportunity to be heard. If I may, just a couple of questions for clarification if you will. One of the questions I have with regards to your brief on page 17, you argue that the circuit court erred in rejecting the city's argument and the plaintiff forfeited her right to raise the issue of cross-examination. Later on then at page 33, you indicate that plaintiff waived her right. I guess my question is there's a difference between waiver and forfeiture. So could you address that briefly for me whether you're arguing waiver or forfeiture at that point? I think she waived her right. What affirmative act did she take such that waiver would be applicable? She failed to request it. I think the plaintiff had the opportunity and the obligation to request the right to cross-examination. She neither requested it nor denied it. Well, I know the Clarence decision mentioned waiver, but waiver is the intentional relinquishment or abandonment, whereas forfeiture is the failure to make the timely assertion of the right. So I'm just clarifying because I think it matters if we look at this as to whether she's required to have a right of cross-examination and those formal proceedings, the court has indicated formal objections go hand-in-hand with formal proceedings and it appears that she did not make any type of request or objection based on my review of the record. That is correct, Your Honor, and Your Honor makes a good point regarding forfeit. I think that she did, in fact, not assert her right and thus forfeited the right to seek that option for herself. In the record, is there, and I know it was a stipulated bench trial, but is there anything in the record indicating that if she had been given the opportunity where she indicated she wanted to cross-examine the developer or had particular questions that she would have asked upon cross-examination? There is not. Thank you. I believe your time is up at this point. It is. Thank you very much. Good afternoon, counsel. You may proceed. Good afternoon again, Your Honors, and thank you for the opportunity here. May it please the court and also my thanks to your staff for having us here today. As I said before, I represent True North Quality Homes in VLLC, the developer of the Parker Project. That's the underlying conflict in this case. I fully agree with my colleague. Respectfully, the trial court incorrectly concluded that the plaintiff was not sufficiently afforded procedural due process in this case. It's uncontested the plaintiff had notice she was at every hearing. It's also not contested that she had a very meaningful opportunity to be fully heard on all of her objections against the Parker Project. As Mr. Cox noted, there were hours and hours of hearings. The plaintiff had several opportunities to speak, to ask questions. The record reflects that she asked direct questions. And with that, I think that that very much fulfills the meaningful opportunity to be heard that this court spoke to in the Erickson case. I think that that's the hallmark of the flexible concept of procedural due process that Claren described, as well as every case that's followed Claren. Procedural due process is a flexible concept tailored to the unique circumstances of each case. One thing that changed since Claren, as Mr. Cox noted, is the statute. I won't go through the full numbers, but I'm referring to the changes to the municipal code as well as the county code. After the enactment of that statute, it has been the subject of over two dozen cases. And the cases have been united that the session was intended to nullify Claren's court holding. That was spoken to in the Commonwealth Convention Association v. City of Chicago case. That case spoke very clearly about what the legislature intended and what that did. The Millennium case from the 2nd District in 2008 discussed the fundamental constitutionality of the legislature's action and helped further describe the process that the legislature was trying to enact with that statute. And I think that one of the other key distinctions that I wanted to draw out here, and I think it's one of the things that Claren turns on, is the distinction under our law between quasi-judicial and administrative decisions which proceed under a closed record and are heard under the administrative review law. And cases such as this, which is a de novo review under the statute for substantive due process and fundamental fairness under the existing rubric of South Actors, it envisions a free-ranging factual inquiry into the... lane, if you will, if we're staying in that lane, that she would be entitled to formal cross-examination. I think that is a crucial distinction, Your Honor. It's a closed versus open record. Under a closed record, the factual testing at the decision-making level is what's reviewed by the circuit court. It's a closed record that's given to the circuit court. And in that case, I think that it is more likely than not that cross-examination is an important component of procedural due process when you're then reviewing on a closed record. And if we move to the second lane, the latter, if you will, that is more of an informal, if you will, proceeding or more flexible in nature, such that it is the meaningful opportunity to be heard and the opportunity to be heard. Right, exactly. Because then in a review of a legislative decision where you're able to sort of freely range among the facts, you can do depositions. You can cross-examine whoever you want to. And along those same lines, as we evaluate that, an objection or lack of objection, if you will, to not being able to cross-examine under the fair to raise would not necessarily be an issue of forfeiture because it's not a formal proceeding, correct? Well, I don't know if that's... Let me think about that question real quick, Your Honor, because I think it is important. And I think you can see where I'm going. I want to discuss the issues of forfeiture here because we generally think of the fact that the more formal the proceeding, the more likely a formal objection or requirement is necessary, whereas other cases it may not rise to that level where it's more informal-type proceedings. So that would not necessarily be something that someone could forfeit, if you will. True. But what I would say, Your Honor, is that the common law is pretty clear that parties that are before a body are charged with knowledge of its rules. And so when you are coming to object before a body, whether it's proceeding informally or formally, you're charged with knowing the rules, right? And if the rules revise for something and you don't ask for it, I would say that that's been forfeited, whether that proceeding is truly formal or informal. Jumping forward just a little bit and seeking some additional clarification, in the Clarent case, they obviously are addressing the special use permit, if you will. Is there a way to distinguish that from the situation we have here with the application for the planned unit development request? Are they different, if you will? I think they are fundamentally different, and I think that a planned unit development is a broader scope legislative decision. It's almost universally allocated solely to a legislative body. There may be some exceptions. I think that maybe the Chicago Zoning Board of Appeals may be able to do it. But in general, a planned unit development is sort of a holistic set of zoning enactments, variances, rezoning, other things that all go into one thing. So fundamentally, I think it's a different thing. And as we consider these cases and cases that might be on point, if you will, does that mean we automatically distinguish a case because it addresses special use versus planned unit development? Or for the purposes of analyzing the law and the facts of this case, can we rely upon those cases that are just addressing special use? Well, I think that they are distinguishable on that basis. But I think that many of these cases, such as Schreiner or the Cyrus I case from the Northern District, they speak to the fundamentals that I think that the question here is about procedural due process. And like I said, every case is universal on the flexibility and the sort of purpose built to the circumstances, the analysis that is. I don't think that this is, you know, one thing that I believe that the court got fundamentally wrong with sort of a mechanical application here. No cross-examination equals automatically no procedural due process. Under any of the cases that we've looked at, I don't think that that's the way that this needs to be analyzed. You mentioned the statute earlier. And generally before we get to the legislative intent, if you will, we generally look to the statutory language to see if it is clear and unambiguous. In this case, you've referenced the statutes. Do you find that language to be clear and unambiguous? I do. Go ahead. I do. I answered the question. As you evaluate, I guess, the last portion of that statute, it talks about regardless of whether the process is in relation thereto is considered administrative for other purposes. What do you mean or what do you consider that phrase to be, the last portion of the statute? It states regardless of whether the process in relation thereto is considered administrative for other purposes. What do you deem that phrase to mean? I think that it is that there is flexibility in the application of the statute. You may continue with your argument. So ultimately, in every case that follows it describes procedural due process as a flexible concept. We submit that the process defined by Galena's zoning ordinance is fundamentally fair. Meaningful opportunity to be deferred was provided. After reviewing the developer's plans, the input of Galena's planning commission, staff, Galena's zoning board, and the input of the community, voluminous input of the community, Galena City Council voted in favor of the Parker Project. Through the course of the trial court proceedings, the trial court turned back every single one of the plaintiff's myriad of complaints about substantive due process and other defamations. But fundamentally, the process was fair. The vote was fair. And the legislative decision of Galena City Council should be upheld. Thank you. You'll have time for rebuttal. Counsel, you may proceed with your argument. Again, I'd like to say good afternoon to the court. Darren Burke, I'm an attorney for Plaintiff Appellee Wendy Clark, who is also present, as I'm sure the court has noticed. And I will be addressing primarily the arguments raised by the city of Galena in their opening brief. This is admittedly an interesting issue, right? And I think it's a narrow issue. It's when a public body is holding a zoning hearing involving a special use permit request, what type of process is due? And I think it is a very pertinent question. This is a PUD application. Claren addresses a special use permit application. Are those the same thing? Can they be distinguished? The trial court, I think, had a very astute factual observation and factual finding, and that was, when you look at the application, it contained five special use permit requests as a matter of right, which, as I'm sure the court is aware, as a matter of right means there's no additional public hearing. There's no additional fact finding. There's no additional cross-examination or whatever we determine constitutes due process. That's it. So I feel to see why there should be a distinction, as counsel argued, between Claren from the Illinois Supreme Court that says, well, no, if it's a zoning hearing involving a special use permit, yeah, due process can be a moving target, but because of the nature of the property rights at issue, if it's a special use permit request, cross-examination is a part of that analysis, and that's directly from Claren, and that's on page 14 of our response brief. So we feel that's the applicable standard. We don't think it's that complex of an analysis because, again, why should there be a distinction between coming before a hearing body simply on a singular special use permit request versus coming for something else that also encompasses multiple special use permit requests? Why should my client be aggrieved or have different procedural rights simply based on what the developer is proposing if the same rights are at issue in that request? Counsel, if I may briefly, the posture of these two cases are slightly different, with this case having been through a stipulated bench trial, and so that is now complete, whereas in Claren we're at a different procedural posture. Do you find there to be any distinguishable factors there that would impact this Court's analysis of the right that was discussed with the right to cross-examination and the likelihood? I mean, that's the phrasing with regards to the posture, the likelihood of success on the merits. Yes, it's certainly an interesting question, and I understand the procedural posture is different, but I think what Claren was getting at is really just the same general principle, and I understand they were at different points procedurally, but I think the heart of the analysis in Claren was simply based on the nature of the property right, irrespective of how you get to the end conclusion. It's just about the rights in the process that should be awarded and this claim afforded, I apologize in this case, to my client in this particular set of circumstances, whereas I think the substance of any argument goes to more of a substantive due process claim, which admittedly is more focused on the end result, and does that make sense? And so we feel that Claren applies here. We feel that the hearing proceedings, based on the statute, the amendment to the simple code, that it's very clear and the trial court came to this conclusion as well. I understand it's de novo as well, or de novo review, but the trial court did come to the conclusion that these proceedings are substantially similar in the sense that the statute indicates that procedural due process applies at all stages of the hearing process, and Galena chose how to handle their hearing process, the zoning provisions of the municipal code give municipalities the right to designate who holds these public hearings. We didn't tell Galena or suggest to Galena to bring it before the zoning board. That's what their ordinance says. So they had it before the zoning board, and as the trial court correctly noted, as a matter of fact, then the city council relied upon those actual determinations and evidence and information that came out of the hearing in making their ultimate conclusion. So because procedural due process applies at every step of the proceedings, we feel that would apply whether it's at the zoning board hearing or the ultimate city council level, because every community is going to do it a bit different. We don't think that in this case Galena should be able to couch a defense just in the sense that, oh, this statute doesn't really apply to us because these hearings were before the ZBA, and the city council makes the decision, so you're just out of luck. I don't think it's reasonable to argue that that was the intent when the statute was passed, basically allowing the municipality to get off scot-free. We actually think that the most instructive and applicable post-clearance decision is a published decision from this very court, and that was the Erickson v. Knox County wind farm decision in 2024. That did address procedural due process directly, both in the concept of notice and a hearing. Admittedly, because the defendant was Knox County, dealt with the county's code as opposed to the municipal code, but as I believe council acknowledged, the language in the statutes is analogous between the two. They literally hear each other. In Erickson, they addressed the procedural due process issues in the context of a zoning hearing for a request for a special use permit to develop a solar farm. My main takeaway from that case that I would encourage the court to consider is that this court cited declarant for the principles of due process and said, yes, it can be a moving concept, but then cited to the appellate declarant decision that said, look, this is, there are certain minimum requirements and they indicated cross-examination is usually one of those, and they said certainly you can tailor that. You don't have to allow unlimited cross-examination, but there is nothing in either Claren's decision or this court's Erickson decision that says you can eliminate the right to cross-examination entirely at a zoning hearing based on a special use permit. Was it eliminated at this hearing? At the hearing with Ms. Clark? Yes, my position would be that it was. And we were talking about the waiver and forfeiture issue. It appears clear that this was an informal process and with respect to whether that was waived or forfeited, depending on the analysis, there was certainly no affirmative act waiving. But our position would be, I think you have to look at the facts and the totality of the circumstances to determine whether she still has the right to bring that claim. Let me stop you there for a point, because I was discussing with counsel earlier what I call the two lanes, if you will. We have the formal process, what we're looking at is quasi-judicial, it is more formal, and I think arguably there I talked about whether there was forfeiture, if in fact she does not raise it. You now stand here and say, well the process used was informal, but are you suggesting that that means it was a legislative decision versus quasi-judicial? So I just want to give you the opportunity to clarify that. Yeah, I might take sort of an abstract answer, but my position is I think the decisions say, including the eliminating maintenance decision and our savior say, even if the legislator legislates herself, tries to distinguish between a legislative act and an administrative act, that's essentially a red herring for determining the purposes of, were the procedural due process rights impacted? And I think what many of maintenance even said, and was clarified by the second district appellate clerk in the our savior decision was, they were presented with that issue, with the changes to the county's code amendment making essentially the same argument that council made in its briefs and again today, and that's well look, the intent of the legislator passing these statutes was to sort of narrow the scope of clearing and basically say, look for future analysis, we have you can frame this in different light essentially, right? That it's not as clear cut as in clearing, but when you think about that as analysis as a whole, what the millennium maintenance and our savior decision say is, well no, even if the legislative intent was to change the scope of this right, that's an abuse of the separation of powers principle, the legislator can't do that, right? So we have to examine the practical impacts of the decision regardless of whether the legislator says view it under this lens or that lens, because my position would be, I don't think it's disputed that Ms. Clark had a constitutional right granted to her after the Clarence decision, that appears to be very clear. I think the only question is, could the legislator have modified that after Clarence, and I think our savior and the millennium maintenance decisions made clear that no, even if there was intent to do that, they cannot modify due process principles, procedural due process principles. So if she had a right after Clarence, and the courts have not adjusted that right, no statutory action, it is our position, can adjust that right or relinquish or diminish that right. Do you find that statute to be clear and unambiguous? I do. And the phrase I ask about, the trailing phrase at the end with regards to regardless, how do you interpret that reference? With respect to at all stages of the proceedings? No. When we go back and it says it starts off any decision of the corporate authorities, the municipality shall be subject to judicial review as a legislative decision. Yes. Regardless of whether the process in relation there to is considered administrative for other purposes. Yes. So does that, I'll let you answer my question there, but tell me how you interpret that phrase. Yes, I believe that is specifically addressing the substantive due process aspects of the claim and I believe it allows still a claim or a lane I should say to exist because section B of that statute does say procedural due process applies at all stages of the proceedings. Thank you. Thank you. Counselor, you may proceed with the argument. Good afternoon. Good afternoon, your honors. May it please the court. I think that an important thing to remember here is that when the municipal code was changed by the legislatures, it did not nullify the reasoning that the Illinois Supreme Court laid down in Clarence. What it did was it changed the ultimate conclusion regarding administrative versus legislative review and how that affected substantive due process. And I think this is an important distinction because we are dealing here not with a question on substantive due process. We're dealing entirely on a question of procedural due process. Now, we raised substantive due process issues with the trial court and the trial court denied all of our motions on substantive due process. The only thing that it granted it on was that procedural due process. And I think the Clarence court was very clear in explaining that their reasoning, the underlying basis behind their reasoning and their ultimate conclusions was based on the Constitution. And that's what can't change. The Illinois Constitution and the U.S. Constitution both clearly set for procedural due process. And in this context, and I think a context which is completely analogous to the one we have here today, the Clarence court said that, you know what, you can go ahead and limit cross-examination. You can tailor it to make it specific to the needs. But what you cannot do is you cannot contravene it completely. And that's what's occurred here today. And I believe that the trial court made a very well-reasoned decision and a very well-reasoned finding of fact when it addressed the actual facts of this case and found that there was, in fact, a full contravention of that right to cross-examination when Chairperson Rosenthal went out and started the very meeting by laying out the rules. He said, okay, first we're going to allow the developers to come in and testify. We're going to allow the opposition to come in. And then we're going to allow the ZBA board to ask questions. Nothing after that. Then we're done. Counsel, if I can interrupt you just for one moment and go back to Clarence. A portion of that decision, though, the Supreme Court was not willing to adopt the majority's blanket endorsement that the appellate court made of E.E. and went on to say that to construe so broadly the phrase public hearing may be inappropriate when we talk about the full rights with regards to due process. They then, and I know you said this is substantive due process, but they go on to say the resolution of this cause instead depends upon the distinction between legislative and administrative hearings before municipal bodies. It seems to me that they've taken the lane of procedural due process because we're talking about the right to cross-exam and then they say we should look to the issue of the type of decision. If you'd speak to that for a moment. They're explaining that there is a more formal process that exists with the administrative hearings as opposed to the legislative. There is some additional layers of due process that can exist in that situation. In this context, that would be things like you've raised previously about forfeiture. You may have an obligation to make a specific objection if it's a more formal process. It ultimately does not affect what the procedural due process insofar as it's creating a right for cross-examination because the Supreme Court laid out that that is the most efficacious way to get to the truth of the matter. Even though there might be some differentiation in this situation about what you have to do to preserve those rights in those different contexts, you can't get rid of that right completely. When we talk about the issue of cross-examination I know we tend to default to what we see in a formal court proceeding but when we really think about it, it's getting both sides of that before the finder of fact, if you will. In this case, it almost appeared as if the board was acting as a filter between those that spoke in opposition or in favor and the developer did respond to some of those questions. Is there anywhere in the record that we have before us where Ms. Clark provided what she was deprived of with regard to even stating that she wanted to ask cross-examination questions of the developer? I don't think the record is particularly clear on that particular point on what she may have wanted to bring up in question but I think that's not really the important point. The important point here is that the rules that were put out by the city of Galena didn't allow her to do that. Everything had to be filtered in through the ZBA so she was not allowed the opportunity, therefore, to actually present these questions, to ask the meaningful questions that would get to the heart of the matter and to make sure that the developer ultimately had to answer the questions which she thought would be most impactful to any decision made by the ZBA. If she had asked a question and the developer had refused what would have been the remedy? Was there a way for the board to force the developer to answer? I guess my question is hypothetically, here I guess I won't say hypothetically yet but here she could present her case present questions, if you will, even if they were not directly to the developer and in fact it appeared on occasion the developer answered it and then she had her opportunity in rebuttal. I guess my question is when we think about a formal process of cross-examination how is it that different when that opportunity to respond and lay out your case is there because she's still getting the portions of her point across that she's challenging, for example, the fire protection and things of that nature and that was responded to. What more could formal cross-examination provide her? I think what formal cross-examination could have done here is literally given her an opportunity to make these questions. You're saying that potentially the developers could have just stayed quiet and chosen not to answer those questions? I'm asking you, could they? There's no mechanism to force them to respond, I guess is my point. Right, and I think that if they did there would certainly be political ramifications of that if the developers are going up there and saying no, I'm refusing to answer those questions, those are too damning to me I don't want to be embarrassed by having to answer those questions I think that there would be a lot of pie in the face of any CBA official or city council member who went ahead and approved something like that so I think that would ultimately be what would happen and I think that would also be something that would be brought up in any court case that came afterwards. I think one thing that's important to remember here though is that really in situations like this where we have a special use hearing or a pub hearing in this case they're very, very analogous in that they are both affecting the property rights of the individuals and there's absolutely no case that has said that the right to cross-examination can be completely ignored or contravened there's all sorts of suggestions that is the case in the arguments and the briefs raised by the appellants but there are no case law that they can actually point to that says that the closest that they have is the Cyrus 1 case which is an interim decision on a completely separate issue on a preliminary injunction and that doesn't, I think, actually address the actual procedural due process issues which are before this court due process rights ultimately cannot be satisfied by having to bring a lawsuit after the fact that was one of the suggestions from the developers that, hey, you can bring a lawsuit later on and when you're in court then you can have a right to cross-examination that's not what the rules have ever been that is not procedural due process before a legislative hearing to force someone to have to bring it to court and I think that would actually undermine the entire purpose for the statutory amendment which was to avoid many trials in that situation procedural due process would only be achieved in a full trial a trial actually before the court systems and our court systems are not designed to have full trials for every zoning decision Counsel, with regards to the right to cross-exam that right arguably could be forfeited but my question is what in this case should we consider that any objection would have been futile at this point? I believe that would be based primarily on the statement of Chairperson Rosenthal immediately prior to the proceedings which the trial court found was very similar to the statement that was made in Claren where they laid out the rules and said basically there's not an opportunity for cross-examination but in Claren didn't they specifically say they were not going to be addressing any questions? They may have but I believe that when you say that listen here's what it's going to be and it doesn't include cross-examination I think that is really the same type of situation that's occurring here You may continue with your argument Any other questions? I've gone through the things I wanted to point out Seeing none, thank you Counsel Thank you Counsel, you may proceed Thank you, I appreciate the time for some rebuttal I think the question here to be presented is not was the plaintiff entitled to due process but what process was due and that's what all of these cases were about Counsel I think misspoke He said there's no case that says that well you didn't need to have cross-examination In fact Schreiner does that because in Schreiner cross-examination was specifically denied to the opponents of the applicant and yet the court, this court found that notice and opportunity to be heard were sufficient in that case and upheld the decision of the zoning board Similarly in Erickson the Erickson court, while there was cross-examination that was provided in that case that wasn't the thrust of the Erickson decision and Erickson in this court noted that the essence of procedural due process is whether there was notice and an opportunity to be heard This I think leads to the whole legislative review and re-evaluation of the statute following the Clarence decision and the avoidance of the mini-trial situation Anyone who's been to a ZBA hearing and has seen one of these operate, I can tell you they do not function as a courtroom does They're usually led by lay people and the concept of conducting formal cross-examination in such a hearing is rather ludicrous actually What we had here was an opportunity where there was point there and counterpoint and in fact there wasn't the limitation of scope of direct in regard to asking any questions on cross but a full discussion of the pros and cons of the proceeding that was proposed to the city council through the ZBA and I think it's an over-reading to say that the general presentation of how this was going to be how the hearing was going to be run was a denial of cross-examination. That simply wasn't the case and as a result of that we're asking that the trial court or that this court reverse the trial court's ruling on count 8 and reinstate the zoning decisions according to city council Thank you I want to thank the parties for their time today and counsel for their arguments The court will take the case under advisement and render a decision in due course and we remain in recess